IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

| | | |
|---|---|---|
| In Re: RHODIE D. FOWLER, Debtor, | : | CHAPTER 13 |
| LARRY D. FOWLER and RHODIE D. FOWLER, Plaintiffs | : | BANKR. NO. 07-11692 |
| v. | | |
| GENNARO RAUSO, DAVID BORSO, CORY MANESS, and D AND B PROPERTY INVESTORS CORPORATION, Defendants | : | ADV. NO. 07- |

## COMPLAINT

1) This is an action a married couple to rescind a transaction wherein the Defendants attempted to take advantage of the Plaintiffs' desperate financial situation and swindle them out of their home. The plaintiffs' claims are based on the fact that, as known to the Defendants, the Husband Plaintiff did not consent to the transaction and the Plaintiffs are exercising rights of rescission under the terms of the contract and those provisions of the Pennsylvania Unfair Trade Practices Act, 73 P.S. § 201-1, et seq. ("the UTPCPL") applicable to door-to-door sales.

2) Jurisdiction of this court to hear this proceeding is conferred by 28 U.S.C. § 1334(b). This is a core proceeding because it seeks, inter alia, a determination of the validity and extent of the Defendant's interst in the Plaintiffs' home, pursuant to 28 U.S.C. §§ 157(b)(2)(K).

3) The Plaintiffs are the Debtor, RHODIE D. FOWLER, the Debtor in this bankruptcy case ("the Debtor") and an individual residing at the home at issue, 983 Allengrove Street, Philadelphia, PA. 19124 ("the Home") with her dependent son; and the husband of the Debtor, LARRY D. FOWLER ("the Husband;"with the Debtor, "the Plaintiffs"), an individual whose address is GB-0913, Unit CB 22-01, SCI-Laurel Highlands, 5706 Glades Pike, P.O. Box 631, Somerset, PA. 15501-0631.

4) The Defendants are GENNARO RAUSO, DAVID BORSO, and CORY MANESS, individuals whose place of doing business is 126 South 5th Street, Darby, PA. 1023; and G AND B PROPERTY INVESTORS CORPORATION ("D & B"), a Pennsylvania business corporation the registered address of which is 2542 Bonnaffon Street, Philadelphia, PA. 19142, but which is believed to be doing business at 126 South 5th Street, Darby, PA.

1

19023.

5) In December, 2006, the Defendants were in dire straits. The Husband, who had been the primary wage-earner in the family, had been incarcerated for over a year; the Debtor had lost her job and was unable to prevent dismissal of a prior Chapter 13 bankruptcy case; and the Home, in which the Plaintiffs had considerable equity, was scheduled for a sheriff's sale on March 6, 2007.

6) The Plaintiffs received numerous solicitations from many parties who claimed to be able to assist them in preventing the loss of the Home, one of which was Defendant Rauso.

7) The Debtor responded to his solicitations and Rauso contacted the Debtor and offered a proposal to the Debtor whereby Rauso would purchase the Home, rent it back to the Plaintiffs for $1000/month for approximately a year, and then sell it back to them.

8) Rauso was aware at all times that the Husband was not present in the Home and that he was an owner who would have to consent to any such transaction.

9) The Debtor was concerned that, if she entered into such a transaction, she would be unable to make the rental payments and she would be in jeopardy of losing the Home permanently. However, Rauso assured her that it was not his intention to take the Home and that he would allow her appropriate dispensations in making the rental payments.

10) In reliance on Rauso's representations, the Debtor agreed to enter into the transaction proposed by Rauso. He then came to the Home and therein the Debtor proceeded to execute the documents presented to her, including a Land Trust Agreement ("LTA"), a Warranty Deed to Trustee ("Deed"), a Power of Attorney in favor of Rauso ("POA"), and a Residential Lease of the Home ("Lease"), copies of which are attached hereto as Exhibits "A," "B," "C," and "D," respectively.

11) The LTA and the Deed must be validly notarized. They bear the signature and seal of a notary. However, the parties who were present when these documents were signed, Rauso and one other individual, did not purport to notarize the documents in the Debtor's presence. The Debtor therefore believes that these documents were not properly notarized.

12) The Debtor was not given or paid any sum for the transfer of the Home to Rauso, even though the Plaintiffs had an equity nt the Home in excess of $100,000. There was, therefore, no consideration received by the Defendants for their transfer of the Home to Rauso.

13) The Debtor and Rauso both knew that the Husband had not consented to the transaction, and that his assent was necessary.

14) When the Husband was informed of the details of the transaction, he unequivocally

2

refused to consent to it and wrote to Rauso, in December, 2006, stating his lack of consent.

15) In December, 2006, the Debtor called Rauso and advised him that the Husband had never consented to the transaction and she wished to rescind the transaction, pursuant to paragraph 22 of the LTA. He refused to agree to the rescission.

16) On January 17, 2007, the Debtor wrote a letter to Rauso rescinding the transaction, sent by certified mail. A copy of this document is attached hereto as Exhibit "E." Rauso continued to ignore the Debtor's attempts to rescind the transaction.

17) The Debtor was unable to make the rental payments of $1000/month to Rauso in accordance with the terms of the Lease. However, instead of providing the promised dispensation to the Debtor, Rauso transferred the Home to Defendants Borso, Maness, and/or D & B to attempt to launder the transaction. However, it is believed that these parties are affiliated with Rauso and therefore were in no sense good faith purchasers or assignees of the Home.

18) It is further believed that these parties have placed additional mortgages and/or liens on the Home, indicating that they never intended to return it to the Plaintiffs, but planned to keep it for themselves.

19) Borso, Maness, and D & B have all filed a Landlord and Tenant Complaint against the Debtor and all occupants of the Home, attempting to evict her from the Home. This action also indicates that Rauso and his coherts never intended to sell it back to the Plaintiffs under any circumstances, but planned to keep it for themselves.

20) Solicitation for the transaction and the execution of the documents relating to it all took place in the Home., and therefore this transaction occurred as the result of and in connection with solicitations at the Debtor's residence. However, the Debtor did not receive any disclosures of her right to rescind this transaction.

## COUNT ONE
### (UTPCPL Door-to-Door Sales Rescission Claim)

21) All of the allegations of paragraphs 1 through 20 are incorporated herein by reference.

22) The instant loan transaction was properly characterized as a sale of property within the scope of the UTPCPL. See In re Smith, 866 F.2d 576, 581 (3d Cir. 1989).

23) The instant transaction, in which the closing took place in the Home, was a transaction where a transaction was engaged in between Rauso and the Plaintiffs as a result of and in

3

connection with a contact with consumers at their residence in person, and hence is within the scope of 73 P.S. § 201-7(a) of the UTPCPL.

24) However, the Plaintiffs did not receive a statement permitting them to cancel or rescind this transaction which was in conformity with 73 P.S. § 201-7(b) in connection with this transaction, or which was completed as required in 73 P.S. § 201-7(c), nor were they given the information regarding this right orally, as required in 73 P.S. § 201-7(d).

25) The cancellation period for this transaction under this law never began to run, as the Plaintiffs were never informed of this right to cancel, nor did they receive the requisite cancellation notice. 73 P.S. § 201-7(e).

26) Rauso was obliged, no later than 20 days after the notice of the Debtor's desire to rescind, to honor this notice of cancellation of this transaction by refunding all payments made, advising whether it wishes to repossess the funds given, and canceling the mortgage taken as security in the transaction. 73 P.S. § 201-7(g).

27) Since Rauso failed to respond within the 20-day period, he has forfeited any right to the proceeds of the transaction. 73 P.S. § 201-7(i).

28) The Defendants are also liable to the Plaintiffs for up to three times the Plaintiffs' actual damages arising from the violations of these statutory provisions or at least $100, plus reasonable attorneys' fees under 73 P.S. § 201-9.2(a).

WHEREFORE, the Plaintiffs request that the Defendants be ordered to reconvey the Home to the Plaintiffs; that they be barred from making any claim for payment against the Plaintiffs; and that they be deemed liable to the Plaintiffs, jointly and severally, for damages of not less than $100, plus be directed to pay the undersigned reasonable attorneys' fees and costs pursuant to 73 P.S. §§ 201-7 and 201-9.2(a) of the UTPCPL.

## COUNT TWO
### (Invalid Notarization)

29) All of the allegations of paragraphs 1 through 15 are incorporated herein by reference.

30) By failing to obtain a valid notarization of the Mortgage allegedly executed by the Debtor, the Defendants failed to obtain a valid LTA and Deed in reference to the Home, in violation of 21 P.S. section 444.

31) The Trustee may avoid the purported transfer of the Home, pursuant to 11 U.S.C. section 544(a).

4

32) The Debtor is entitled to prosecute this claim pursuant to 11 U.S.C. sections 522(h) and (g)(1) because the Trustee has not done so.

   WHEREFORE, the Debtor requests that this court will declare the Defendants' title which is derived from the defective LTA and Deed to be null and void and will declare that the claim of the Defendants to the Home is invalid and must be set aside.

## COUNT THREE
### (Other Defects in the Defendants' Claims)

33) The allegations of paragraphs 1 through 19 are incorporated herein by reference.

34) The purported attempt to transfer the Home when the Husband never agreed to the transfer is null and void.

35) The termination of the LTA pursuant to paragraph 22 thereof also invalidates the transaction.

   WHEREFORE, the Debtor requests that this court will declare the Defendants' title which is derived from the defective LTA and Deed to be null and void and will declare that the claim of the Defendants to the Home is invalid and must be set aside.

## COUNT FOUR
### (Additional Violations of the UTPCPL)

36) All of the allegations in paragraphs 1 through 35 are incorporated herein by reference.

37) By misrepresenting the nature of the transaction and his intentions in this transaction to the Plaintiffs, advertising and presenting his services with no intention to provide them as represented, knowingly misrepresenting the need for his services, and engaging in actions which violated the applicable law and the rights of the Husband, and were intended to cause confusion and misunderstandings in the mind of the Debtor regarding the terms of the transaction, Rauso engaged in conduct in violation of 73 P.S. sections 201-2 (4)(v), (ix), (xv), and (xxi), for which he and his co-conspirators, the Defendants, are liable.

38) The Defendants are for these reasons also liable to the Plaintiffs for up to three times the Plaintiffs' actual damages arising from the violations of these statutory provisions or at least $100, plus reasonable attorneys' fees under 73 P.S. § 201-9.2(a).

WHEREFORE, the Plaintiffs request that the Defendants be deemed liable to the Plaintiffs, jointly and severally, for damages of not less than $100, plus be directed to pay the undersigned reasonable attorneys' fees and costs pursuant to 73 P.S. §§ 201-7 and 201-9.2(a) of the UTPCPL.

*(signature)*
DAVID A. SCHOLL
6 St. Albans Avenue
Newtown Square, PA 19073
(610)-353-7543
Attorney for the Plaintiffs